# JOHN R. HEARNE vs. SOLOMON F. GILLETT.

IN THE SUPREME COURT OF TEXAS, AUSTIN TERM, 1884.

*Land Certificate*, before locations is and may be dealt with a personal property, but after location it merges into and becomes part of the realty, and cannot, any more than can the land, be conveyed by parol.

*Same—Limitation.*—The location and survey of a valid land certificate is such color of title as will sustain the defense of three years limitation, and support the action of trespass to try title.

*Same—Reservation.*—As a general rule the certificate will pass with the land upon which it is located. It is competent, however, to reserve it from the operation of the conveyance, and by floating it restore its character as personalty. But without such reservation it will pass with the land to the extent that it is located thereon.

*Same—Burden of Proof.*—It is not incumbent on the party claiming under such a conveyance to show that the certificate did pass, but the burden is on the other to show that it did not.

*Construction of written instruments.*—A primary rule for the construction of a written instrument is thus stated: "The entire instrument must be construed together, and if the instrument thus considered is susceptible of reasonable construction, harmonizing all of its provisions, giving full force to all of its various parts, then that will be considered the true intrepretation." Note in the opinion recitals in an agreement conveying a certificate, which, construed together, cannot be held to operate as a reservation, but that to the extent located upon, the land passed and vested the certificate in the appellee. As he was the owner of the land to that extent, he would have an interest in the land upon which it was subsequently located proportionate to his interest in the certificate.

Appeal from Robertson county.

W. Kemp and T. J. Beall, for appellant.

H. D. & F. H. Prendergast, for appellee.

### STATEMENT.

May 12, 1880, Gillett, brought this suit aganist Hearne and others in the District Court of Hamilton county, to recover an undivided interest of 2289 acres, out of the league of land patented to the heirs of Rhoda Kennedy, situated in that county. By the agreement of the parties the venue was changed to Robertson county.

The defendants answered by general demurrer, general denial and

not guilty. Hearne having acquired all the interest of his co-defendants the suit was discontinued as to them.

The same land was in part covered by two old grants, that to Rinz for four leagues, and that to Nixon for eleven leagues. This land was situated in Robertson county. About 1850 the Rhoda Kennedy certificate was located on that conflict, and parties went into possession under that location. Finally Columbus C. Hearne became the owner of that title, and to aid him in resisting the Nixon title, he purchased of the Watrous heirs their interest in the Rinz grant, of about 6000 acres, and about $17,000 of the purchase money remained unpaid at the time of the execution of the agreement hereinafter mentioned.

There was a suit in the United States Circuit Court at Austin by the Nixon heirs against Hearne. The latter having died, his widow as executrix, was made party, and a judgment recovered against her for the land. In the meantime a suit was pending against her in the District Court of Robertson county, by the Watrous heirs, for the purchase money and foreclosure of the vendors lien. To settle and adjust all their rights and conflicting claims the heirs of Nixon, the heirs of Watrous and Mrs. Hearne entered into a tripartite agreement, dated January 13, 1869, by which Mrs. Hearne was to convey to the Watrous heirs, or whoever that might designate, a part of the land, and in accordance therewith conveyed to Gillett 2289 acres of the same.

Afterwards Hearne floated the Rhoda Kennedy certificate and located the land in controversy, and patent was issued therefore to the heirs of Rhoda Kennedy. Gillett claims that 2289 acres of that certificate passed to and vested in him by the deed from Mrs. Hearne, and that, therefore, he was entitled to that number of acres of the land in controversy. This was the real point at issue between the parties.

July 22, 1882, the case was tried without a jury, and judgment rendered in favor of Gillett for 2288 acres of the land, and for partition, etc.

### OPINION.

An unlocated land certificate in this State is considered as personal property and may be dealt with as such. Watkins vs. Gilkerson, 10 Texas, 340 ; Evans vs. Hardeman, 15 Texas, 480 ; Cox vs.

Bray, 28 Texas, 261 ; Stone vs. Brown, 54 Texas, 334. But after such certificate has been located, it can no longer be considered as personalty, but is then merged into and becomes part of therealty.

In treating that question Justice Moore, in Simpson vs. Chapman, 45 Texas, 566, used the following language : "But when it is located it loses this character. It then attaches with the land, and becomes a chattel real, and can be assigned and transferred by parol no more than the land itself. Instead of being merely property of itself, it is, like a deed, the evidence of title to the land upon which it is located. And though its sale or assignment subsequent to location, if in writing, but not otherwise, may in equity be held to operate as a transfer of the land, it is the land and not the certificate, which is the thing sold. The right to the certificate is an incident to, and necessarily accompanies a transfer of the land."

What is there said with reference to the subject is supported by a long line of decisions in this State. By the express terms of the statute the location and survey of a valid land certificate constitutes such color of title as will support the defense of three years limitation, and such title as will authorize the maintenance of the action of trespass to try title.

While the general rule that the certificate will pass by a conveyance of the land upon which it is located is undoubtedly true, still, it would be competent for the parties to reserve the certificate from the operation of the conveyance, and by floating it, again restore its character of personalty. But if there is no such reservation, then the located certificate will pass with the land to the extent that it is located thereon. It is not incumbent upon the party claiming under such a conveyance to show that the certificate did pass with the land, but the burden is upon the claimant to show that it did not.

Here it is claimed that the intention to reserve the certificate is plainly inferable from the language used in the second clause of the tripartite agreement, which is as follows : "On the execution of deed of conveyance therefor, re-conveying to them, (Watrous,) or such person as they might name, in lieu of themselves, the title that was conveyed by said Daniel E. Watrous, to said Columbus C. Hearne, and also the title under said grant of eleven leagues of grant to said Nixon."

The fifth clause of that agreement is as follows : "It is further stipulated and agreed that all the parties hereto shall respectively

execute to each other deeds of conveyance for all the rights, claims and title that each may have, or supposed to have had, in and to the parcels or lots of ground that may be partitioned, allotted and set apart under the foregoing covenant and agreement, to each of the parties hereto, when said partition and allotments shall be made."

In pursuance of said agreement the partition was made and deeds executed. There was no reservation of the crrtificate in the deed executed by Mrs. Hearne to the appellant. But it is claimed that such reservation arises by implication from the language used in the second clause of the agreement, and especially when read in the light of the circumstances attending the transaction, and that reference is not affected by the fifth clause of the agreement.

One of the primary rules of construction is, that the entire instrument must be taken and construed together. If the instrument, when thus considered, is susceptible of a reasonable construction, by which all its provisions are made to harmonize, and by which full effect is given to its various parts, then that will be considered the correct interpretation.

To adopt the construction contended for by the appellant would result in giving to the second clause its utmost force and effect, without the least regard whatever to the subsequent clause. It it should be conceded that, standing alone, the reservation of the certificate might be implied from the former, still, if any effect is to be given to the latter, than that implication would be overcome. For by the express terms of that claim, "All the right claims and title" that each of the parties thereto had, or was supposed to have to the particular land, was to pass by ¦the conveyance made in accordance therewith.

As has been seen, the location of the certificate upon the land constituted a claim to the same, such title as would support a suit or upon which to predicate a plea of three years limitation. Then, according to the plain import of the languge used, it follows, to the extent the land conveyed by Mrs. Hearne was covered by the certificate, that it passed to the appellee with the land. That construction is in harmony with and in no way militates against the second clause of the agreement.

Nor does the attending circumstance aid the construction contended for by appellant. It was a compromise and settlement of conflicting claims, each party having a claim to the same land. And

it was to finally settle and adjust the whole matter that the compromise was made. It could hardly be expected that the Watrous heirs would accept simply a reconveyance of the Rinz title, leaving the Kennedy title outstanding and unsettled, when the obvious intention of the parties was to finally conclude all questions as to the land, so rar as they were concerned.

In our opinion the certificate to the extend that it it was located upon the land that Mrs. Hearne conveyed to appellee, passed to and was vested in him by reason of that conveyance. And as he was the owner of the certificate to that extent, he would have an interest in the land upon which it was subsequently located, proportioned to his interest in the certificate.

Keys vs. Railroad Company, 50 Texas, 174.

Hermon ys. Reynolds, 52 Texas, 395.

Our conclusion is that there is no error in the judgment and that it ought to be affirmed.

Report of Commissioners of Appeals examined, their opinion adopted and the judgment affirmed.

Affirmed. Watts, Commissioner. Adopted.

Justice West did not sit in the case.

