**WARREN v. LA SALLE CO.　(No. 6754.)**

(Court of Civil Appeals of Texas. Austin. April 30, 1924. Rehearing Denied May 28, 1924.)

**1. Pleading ⟨key⟩311—Written instrument may be made part of pleading by reference as an exhibit.**

Where a pleading is founded on a written instrument, a copy may be annexed and made a part of pleading by reference as an exhibit.

**2. Pleading ⟨key⟩310—Exhibit considered part of declaration in determining sufficiency of pleading; both pleading and exhibit construed together.**

In determining sufficiency of averments of a cause of action, an exhibit is considered to be a part of declaration, and both pleading and exhibit are to be construed together.

**3. Pleading ⟨key⟩216(2)—General demurrer sufficient to raise question of legality of contract sued on and made an exhibit.**

A general demurrer is sufficient to raise the question of legality of contract which is sued on and made an exhibit.

**4. Pleading ⟨key⟩32—Allegations controlled by written instrument on which founded.**

Allegations of a pleading are controlled by statements of written instrument on which it is founded.

**5. Brokers ⟨key⟩57(1)—Pleadings held not to allege cause of action for commissions, where contract attached merely appointed alleged purchaser as agent for sale.**

Plaintiff alleged no causes of action based upon express or implied contract entitling him to a commission for procuring a purchaser for defendant's land, where written contract, attached to his petition as foundation of his action, did not constitute a sale of the land, but was merely a contract appointing one the exclusive agent to sell the land.

**6. Vendor and purchaser ⟨key⟩3(3)—Test in determining whether instrument is contract for sale of land or agency stated.**

The test whether an instrument is a contract of sale of land or of agency to sell is, Can each party require specific performance of contract for sale and purchase of land?

**7. Pleading ⟨key⟩34(1), 48—To be construed liberally.**

All pleadings are to be construed liberally; it being sufficient for a pleading to set forth a full and clear statement of cause of action without ambiguity or contradiction, and a clear statement of relief sought.

**8. Pleading ⟨key⟩18—Facts must be alleged with sufficient certainty to enable adverse party to understand and meet with proof.**

A pleader must allege facts relied upon with that certainty which will enable adverse party to understand and to meet them with proof.

**9. Pleading ⟨key⟩248(2)—When no new cause of action set up by amended pleading stated.**

No new cause of action is set up by an amended pleading, where allegations of both pleadings are substantially the same; same evidence supports both, and both are subject to same defense.

**10. Limitation of actions ⟨key⟩127(4)—Amended petition held not to state a new cause of action.**

Where an original petition in a broker's action for commissions, when construed with an attached contract, could reasonably be interpreted to mean that plaintiff procured contract at defendant's request, and that plaintiff asked allowance of 5 per cent. on price of land sold, if the contract was construed to be a contract of sale, and, if not so construed, allowance of usual amount paid a real estate broker for obtaining an agency contract, an amended petition, alleging demand of commission for obtaining attached contract, with prayer for relief for commission due for procuring contract, *held* not to state a new cause of action as respects limitations.

Appeal from District Court, Williamson County; Cooper Sansom, Judge.

Action by R. M. Warren against the La Salle Company. Judgment for defendant,

and plaintiff appeals. Reversed and remanded.

Taliaferro, Cunningham & Moursund, and W. B. Jack Ball, all of San Antonio, and Amos Peters, of Taylor, for appellant.

Mantor & Briggs, of Taylor, and Wilcox & Graves, of Georgetown, for appellee.

BLAIR, J. On June 9, 1922, appellant filed suit against appellee to recover a commission alleged to be due him as a real estate broker by reason of the sale of certain lands owned by appellee. His original petition, omitting formal parts, reads:

"(2) That during the year 1920 plaintiff was engaged in the business of real estate brokerage, which fact was well known to the defendant; that the defendant was the owner of the following-described tract of land situated in La Salle and McMullen counties in the state of Texas, comprising 26,000 acres, and being popularly known as La Salle Company ranch and a part of what was originally known as the O'Connor ranch.

"(3) That said defendant was desirous of selling said lands, and employed the plaintiff to find a purchaser therefor at a price to net the seller the sum of $15 per acre for each acre sold, and agreed to pay the plaintiff for his services in finding a purchaser for said land a reasonable compensation therefor, which plaintiff avers is and was 5 per cent. of the sale price.

"(4) Plaintiff would further represent and show to the court that at the request of the said defendant he went to work diligently to obtain a purchaser for said lands, and did find a purchaser for said lands in the person of George Hagelstein of San Antonio, Tex., and that on the 23d day of August, 1920, the defendant La Salle Company, acting by its President Howard Bland, entered into a written contract with the said George Hagelstein, a copy of which said contract is herewith attached and made a part hereof.

"(5) Plaintiff would further represent and show to the court that said contract was obtained by the defendant through the efforts of this plaintiff and in pursuance of his employment by the said defendant; that said contract was entirely satisfactory to the said defendant, and under said contract approximately 5,000 acres of the lands in said tract were sold and paid for; and all of the said 26,000 acres of land would have been sold under the terms of the said contract but for the fact that after the sale of said 5,000 acres the defendant withdrew all of said lands from the market, and refused to permit any more of the same to be sold under said contract.

"(6) Plaintiff would further represent and show to the court that the usual and customary commission paid real estate brokers on transactions such as the one herein described is, and was at the time said contract was made, 5 per cent. of the sale price, and that by reason of the employment of said plaintiff by the defendant and the acceptance of his services in defendant's behalf the said defendant became bound, obligated, and promised to pay said plaintiff the usual, reasonable, and customary commission, to wit, 5 per cent. on the total sale price of said land, to wit, $19,500.

"(7) Plaintiff would further represent and show to the court that, notwithstanding the fact that he had frequently demanded payment from said defendant, it has hitherto failed and refused and still refuses to pay plaintiff his said commission, or any part thereof, to plaintiff's damage in the sum of $25,000.

"(8) Plaintiff further represents and shows to the court that he is entitled to interest on said commission from the date when same became due and payable at the rate of 6 per cent.

"Wherefore, premises considered, plaintiff prays for citation to be issued and served on this defendant, and that he be required to appear and answer this petition, and that upon a final hearing hereof plaintiff have judgment against said defendant for his commission, interest, for all costs, and for such other and further relief as he may be entitled to in law or in equity."

To this petition appellee filed an answer consisting of a demurrer and a denial.

On April 12, 1923, appellant filed his first amended original petition, which substantially reiterated the matters in the six paragraphs of the original pleadings above quoted, amplifying on the facts pleaded originally, and setting out in hæc verba the contract referred to in the original pleadings. Two other counts seeking a recovery on an implied contract, or quantum meruit, were pleaded in the alternative in this amended petition in paragraphs 7 and 8 thereof, which read:

"(7) In the alternative, if plaintiff should be mistaken in regard to the express contract as hereinabove alleged whereby the defendant agreed to pay plaintiff the usual and customary compensation, plaintiff would respectfully represent and show to the court that the defendant, knowing that plaintiff was engaged in the business of selling lands on commission, solicited the services of the plaintiff in aiding the defendant in procuring a purchaser for said lands in whole or in part; that plaintiff, at the request of the defendant and the duly authorized agents of the defendant prior to the 23d day of August, 1920, by much labor and effort and expense on his part did induce George Hagelstein to enter into the contract hereinabove referred to and copied between the said Hagelstein and the defendant, and by reason of said contract 5,000 acres of said land was actually sold for $15 per acre, and on terms satisfactory to the defendant, and that all of said land would have been sold had the defendant not withdrawn the balance of the said lands from the market, and by reason of the premises defendant became justly indebted to the plaintiff for the reasonable value of the services rendered to the defendant by the plaintiff. Plaintiff alleges the reasonable value of said services to be the sum of $19,500. Plaintiff alleges that defendant and its officers had full knowledge of the fact that plaintiff was the efficient and procuring cause of the said Hagelstein becoming interested in said lands, and that the plaintiff induced said Hagelstein to enter into the contract hereinabove referred to, whereby the lands of the defendant were actually sold, and that the defendant with full knowledge of the fact that it was through the efforts of the said plaintiff that Hagelstein entered into this said contract on August 23,

1920, and with full knowledge of the terms of said contract, the defendant requested and accepted the services and efforts of this plaintiff, and took the benefit thereof, and by reason thereof became justly indebted and did promise to pay plaintiff a reasonable compensation for his services, which plaintiff avers is and was 5 per cent. of the sale price of the said lands, amounting to the sum of $19,500.

"(8) In the alternative, plaintiff would respectfully represent to the court that, should it be held by this court that the contract entered into by and between said defendant and George Hagelstein on or about the 23d day of August, 1920, did not constitute such a contract as to make the said George Hagelstein a purchaser of the lands from said defendant, plaintiff alleges that said contract was procured through the efforts of the plaintiff; that the defendant received and accepted the benefits of said contract; that the defendant was benefited by said contract; that the defendant and its duly authorized agents did request and solicit the plaintiff to render his services and efforts in order to procure said contract; that by reason of said contract and as a result therefrom defendant actually sold 5,000 acres of its land, and would have been able to sell all of the remaining parcels had the defendant not taken same off the market; that by reason of the premises defendant became justly indebted to the plaintiff for his services and efforts rendered in behalf of said defendant; plaintiff alleges that the reasonable value of such services is the sum of $19,500."

In answer to this amended petition appellee filed its first amended original answer, by which it demurred generally to said petition, and specially excepted to the first count on the ground that it did not appear therefrom that a purchaser had been found by appellant, and to the second and third counts (paragraphs 7 and 8) on the ground that they set up new causes of action and were barred by limitation. These two special exceptions to paragraphs 7 and 8 were sustained by the court. An opportunity was given appellant to amend in these particulars, but he refused to do so. Appellee then urged his general and special demurrers to the first count of appellant's petition, which were also sustained by the court, and after appellant's refusal to amend final judgment was entered, from which appellant has duly perfected this appeal, seeking our decision upon the correctness of the above rulings of the court on the demurrer and special exceptions to his pleadings.

Appellant's contention on this appeal is that he alleged in his original petition three separate and distinct causes of action, as follows:

(1) A cause of action based upon an express contract of employment to sell appellee's lands as a real estate broker, for which he was to be paid the usual 5 per cent. brokerage commission on the sales price of the lands.

(2) A cause of action based upon an implied contract of employment, or a quantum meruit, to sell appellee's lands, for which he was entitled to receive the usual and reasonable commission of 5 per cent. of the sales price of the lands.

(3) A cause of action based upon an implied contract or a quantum meruit to pay appellant the reasonable and customary commission of 5 per cent. on the sales price of lands sold for his services in procuring the written contract between appellee and Hagelstein, whereby Hagelstein became the exclusive agent for the sale of appellee's lands, and under which contract some of the lands were sold.

Appellant attached to and made a part of his original petition by reference the written contract between appellee and Hagelstein, which contract appellant alleged that he obtained in pursuance of his employment to sell appellee's lands. We are of the opinion that a determination at once of the question raised of whether this said contract constituted a sale of the lands by appellee to Hagelstein, or constituted a mere appointment by appellee of Hagelstein as an exclusive agent to sell the lands described, would eliminate the necessity of our determining whether or not appellant alleged causes of action based upon either an express or implied contract to sell appellee's lands. In other words, if the contract does not constitute a sale of appellee's lands to Hageltein, then appellant's causes of action, based upon an express or implied contract of employment to sell appellee's said lands, fail, and there would be left for determination only the question of whether appellant sufficiently, in his original petition, alleged the cause of action set forth in paragraphs 7 and 8 of his first amended original petition, relating to his right to a recovery for obtaining the contract, so as to not set up a new cause of action barred by limitation at the date of filing the last-named pleading.

The trial court sustained the following exception of appellee:

"This defendant specially excepts to the first count of plaintiff's said petition as contained in paragraph 2 to paragraph 6, inclusive, and says that the allegations contained in said paragraphs show no cause of action against this defendant, because it is alleged in said portion of said petition that plaintiff was employed by the defendant to find, or assist in finding, a purchaser for the land therein mentioned, and it does not appear from said petition that the plaintiff found or assisted in finding a purchaser for said land or any part thereof."

[1-3] Although this exception is designated a special exception, it in fact is but a general demurrer or exception. However, whether general or special, the court correctly sustained the exception. Under the modern rules of practice where a pleading is founded on a written instrument a copy thereof may be annexed, and made a part of the pleading by reference as an exhibit. It

is also a rule that, for the purpose of determining the sufficiency of the statement or averments of the cause of action, an exhibit is considered to be a part of the declaration, and both the pleading and exhibit are construed together; therefore a general demurrer is sufficient to raise the question of the legality of a contract which is sued on and made an exhibit, since the rights of the parties must be determined by the terms of that instrument so far as they are dependent on it. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Greeff v. Equitable L. Assurance Soc., 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; 21 R. C. L. 476, § 39.

[4, 5] The rule is also established that the allegations of a pleading are controlled by the statements of the written instrument on which it is founded. Bymun v. Preston, 69 Tex. 287, 6 S. W. 428, 5 Am. St. Rep. 49. Applying these rules to the pleading in this case, appellant alleged no causes of action based upon either an expressed or implied contract entitling him to a commission for procuring a purchaser of appellee's lands in the person of Hagelstein, because the written contract attached to appellant's petition as the foundation of his causes of action, alleged in the first two counts of his pleadings, does not constitute a sale of the lands, but is merely a contract appointing Hagelstein the exclusive agent to sell appellee's lands. The contract in question is very lengthy, and we will not undertake to set it out in full; but find that it is a similar contract to the one set forth in the case of Ansley Realty Co. v. Pope & Smith, 105 Tex. 440, 151 S. W. 525, and more nearly similar to the one set forth in the case of Paschen v. Lovett (Tex. Com. App.) 255 S. W. 385. However, the contract here under consideration did not comply as nearly with the terms of a sale as does either of the contracts in the above-mentioned cases. After describing the parties and the lands, this contract binds the parties as follows only:

"The party of the second part agrees, covenants and binds himself that he will promptly begin operations for placing said above described lands upon the market, and will exercise due and proper diligence and energy in advertising same and presenting same for sale to the general public, and in effecting sales and delivery of said property. * * * Said land shall be sold in tracts of not less than one hundred sixty acres (160) each, and the party of the first part shall receive as consideration for the sale of said land by him, the net sum of fifteen and no/100 ($15.00) dollars per acre for each acre sold hereunder. * * *

"It is agreed and understood that as compensation for the work done by the party of the second part in placing said land upon the market and in selling same hereunder, he shall receive all amounts in excess of fifteen and .00/100 ($15.00) dollars per acre for which he may be able to sell said property. * * *

"At the consummation of said sale made hereunder, the party of the second part shall prepare all necessary deeds with general warranty of title and notes, and shall forward such deeds and notes to the party of the first part at Taylor, Texas, and the party of the first part upon examination and approval of said papers. * * *

"It is agreed and understood that the party of the first part shall and will withhold the entire acreage of its La Salle county ranch now owned by it from sale or contract to any one other than the party of the second part during the life of this contract. * * *

"It is further understood that upon the termination of this contract by either party for reason of default, then and in such an event this contract shall be wholly voided as to both parties hereto, and there shall be no further liability attaching to either parties hereunder."

[6] There is nothing in this contract to create the relation of vendor and purchaser. The rule laid down in the last two cases cited to determine whether the instrument is a contract of sale of the land, or a contract of agency to sell, is, Can each party require a specific performance of the contract for the sale and purchase of the land? Applying the rule to this case, it conclusively determines the question here raised against appellant, and sustains the ruling of the trial court on the exception of appellee.

The next question for determination is, Does appellant's original petition filed herein allege a cause of action based upon an implied contract, or a quantum meruit, to pay appellant the reasonable and customary commission of 5 per cent. on the sales price of lands sold for his services in procuring the written contract between appellee and Hagelstein, whereby Hagelstein became the exclusive agent for the sale of appellee's lands, and under which contract some of the lands were sold? If so, then the trial court erred in sustaining appellee's special exceptions to paragraphs 7 and 8 of appellant's first amended original petition as setting up a new cause of action then barred by limitation.

[7, 8] The question here presented has often been before our courts. Certain rules or tests have been laid down by which courts are to determine whether or not an amendment to a petition sets up a new cause of action with reference to the statutes of limitation. The strict rules of construction of pleadings enforced by the common law have been supplanted in Texas by statutes and court decisions requiring all pleadings to be construed liberally. Under our system of pleading all that is required to be set forth is "a full and clear statement of the cause of action," without ambiguity or contradiction; and also a clear statement of the relief sought. Hollis v. Chapman, 36 Tex. 1. The purpose of pleadings is to present the issue to be tried and determined, whether of law or of fact, and in a more restricted or commonly accepted sense to notify the op-

posite party of the facts which the pleader expects to prove, in order that such adverse party may be prepared to meet the alleged facts. So it follows that a pleader must allege the facts relied upon with that certainty which will enable the adverse party to understand them and prepare to meet them with proof. The following rule is laid down by 21 R. C. L. 447, § 9, as a test for sufficient pleadings:

"The usual test as to the declaration is that it should state the cause of action with such a reasonable degree of certainty as will give fair notice to the defendant of the character of the claim or demand made against him so as to enable him to prepare for his defense; and the same general regard for fair notice to an adversary as to the scope of proof under the issue is, in its last analysis, the vital test as to the proper pleading of defenses, and the determining factor as to whether they may be comprehended under the general issue or should be specifically set forth."

The courts of all states abrogating the common-law rule of strict construction of pleadings and adopting the Code rule of liberal construction have laid down the following general rules for interpreting the language of pleadings:

"(1) Language in pleadings must be given its reasonable and ordinary meaning and import; and paramount regard should be given to substance rather than to form.

"(2) Words used in a pleading must be construed with reference to the context, and, when it is apparent that a word is not used in the statutory sense, courts will interpret it in the light of its relation to and as explained by the pleadings as a whole.

"(3) In general, the rules of interpretation and construction applicable to pleadings are the same as those pertaining to other writings and documents.

"(4) A rational and reasonable construction is to be given to pleadings, and, where it is open to construction, that reasonable meaning which will support it should be given rather than a construction which will defeat it."

In connection with the general rules of construction above set forth our courts have adopted in addition thereto certain rules as to whether from the language used in an amended pleading a new cause of action is set up or alleged. In the case of Phœnix Lbr. Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, Judge Brown, in writing the opinion for the Supreme Court, laid down the following rule:

"It is not sufficient that the causes of action be similar in their nature, but they must be essentially identical. Four tests are laid down by which to determine the identity of the causes of action: (1) Would a recovery had upon the original bar a recovery under the amended petition; (2) would the same evidence support both of the pleadings; (3) is the measure of damages the same in each case; (4) are the allegations of each subject to the same de-fenses? 1 Am. and Eng. Enc. of Pl. and Pr., p. 556."

Other general rules of pleading applied to save causes of action from the bar of limitation by reason of amendments have been thoroughly and ably discussed by Judge Greenwood in the case of Pope v. Railway Co., 109 Tex. 311, 207 S. W. 514. The following is quoted from this opinion:

"Under the settled rules of pleading and practice in this state, the right to amend, so as to defeat limitation, when interposed against the cause of action which accrued, under the federal statute, to the representative of Pope's estate, cannot be doubted.

"Thouvenin v. Lea, 26 Tex. 615, announces the principle, always adhered to by this court, that 'the very object of an amendment is to supply the omissions of the original pleadings. And it never has been supposed that the statute of limitation would present any impediment to its being done at any time during the progress of the cause. The statute only operates as a bar when it is sought under the name of an amendment to present a new suit.' Tribby v. Wokee, 74 Tex. 144.

"The principle has been repeatedly applied in Texas to save causes of action from the bar of limitation, when such causes of action were presented in amendments filed after the expiration of the statutory period, notwithstanding the original pleadings, which were filed within the statutory period, were so lacking in averments essential to the statement of a cause of action as to be bad on general demurrer. Western U. Tel. Co. v. Smith, 146 S. W. 333; Boyd v. Beville, 91 Tex. 443, 444, 44 S. W. 287; Bigham v. Talbot, 63 Tex. 273."

[9] The most recent expression on this subject is found in an able opinion by Judge Powell, of Section B, Commission of Appeals, in the case of Fuller v. El Paso Times Co., 236 S. W. 455, in which a rule was announced that no new cause of action is set up by an amended pleading where the allegations of both pleadings are substantially the same, substantially the same evidence supports both, and both are subject to the same defense.

It was held in the case of Mann v. Mitchell (Tex. Civ. App.) 241 S. W. 715, that:

"The general rule is that, unless the pleadings upon their face disclose a contrary purpose, an amended original petition will be regarded and treated as only a continuation of the same suit, and upon the same cause of action described in the original pleadings. The plaintiff may by amendment not only make new parties and enlarge the scope of the original suit, but he may also adopt that means for the purpose of correcting clerical errors in stating the names of the defendant and in the description of the instrument or contract sued on, without breaking the continuity of the original suit."

[10] Applying the above-stated rules and tests to the original petition filed in this case, we have reached the conclusion that it did al-

lege a cause of action based upon an implied contract, or a quantum meruit, to pay appellant a reasonable commission (alleged to be 5 per cent. on the sales price on transactions such as the one herein described) for services rendered in procuring the agency contract between appellee and Hagelstein, at least to the extent of the sales price of the lands sold by said Hagelstein under this contract. As to the allegations that all the lands would have been sold under the contracts had appellee not withdrawn them from the market, they aver no cause of action, in view of the fact that the contract contains many provisions whereby it could be annulled. No allegation is made that appellee did not rightfully terminate the contract under some of its provisions after the sale of the 5,000 acres thereunder. We do not feel warranted in holding that this petition clearly stated a cause of action upon an implied contract, or a quantum meruit, based upon appellant's services in procuring the agency contract; but, in view of the principle often applied by the Supreme Court ("to save causes of action from the bar of limitation, when such causes of action were presented in amendments filed after the expiration of the statutory period, notwithstanding the original pleadings, which were filed within the statutory period, were so lacking in averments essential to the statement of a cause of action as to be bad on general demurrer"), we feel that we only correctly apply the rule in this case. It is always a difficult task to interpret the meaning of language. The most perfect writers are often guilty of using ambiguous language. The difficulty in determining cases of this character is not found in the precedents arising out of the rules of interpretation, nor from the statement of the governing rules and principles, as from the inherent difficulty in interpreting and knowing the meaning of the language used. Interpretation of language by the best authorities oftentimes differs widely.

As we interpret appellant's original pleading, paragraph 2 describes the parties and their connection with the subject-matter furnishing the foundation of this suit. The third paragraph alleges an express contract of employment by appellee of appellant to sell its real estate. The fourth paragraph alleges the effort on the part of appellant to find a purchaser of appellee's lands at its request, or under the contract of employment, and that he did find a purchaser in the person of George Hagelstein, who entered into a contract with appellee, a copy of which was attached and made a part of the petition. This copy of the written contract became a part of appellant's declaration of his pleading, and must be construed together with his other pleadings. In fact, it became the foundation of appellant's cause of action, for by it he must establish the performance of the

contract alleged in the two preceding paragraphs. This contract did not constitute a sale of the property described; therefore appellant's causes of action, whether based upon an express or implied contract to sell the lands, fail, since this contract must constitute the performance of the sale of appellee's real estate by appellant, else he cannot recover for such sale. The fifth paragraph alleges that the contract attached was obtained by appellant through his efforts in pursuance of his employment; and that the contract was entirely satisfactory to his employer; and that a part of the lands was sold and paid for under this contract, and all would have been sold but for appellee's withdrawing them from the market. Thus a breach of the contract as obtained was alleged. Appellant does not in this paragraph attempt to define the contract, but leaves that for the court. The sixth paragraph alleges "that the usual and customary commission paid real estate brokers on transactions such as the one herein described is, and was at the time said contract was made, 5 per cent. of the sale price." Again he does not attempt to define the contract, but alleges the sum he is entitled to receive as commission, whether the contract be one of sale or the appointment of an agency. The reasonable interpretation of the language used would mean that appellant procured a contract by reason of his efforts, at the request of appellee, which he asks the court to interpret and allow him 5 per cent. on the sales price of the lands sold, if it be construed to be a contract of sale; if not, then to allow him the usual amount paid for services of a real estate broker in obtaining an agency contract, which is alleged to be 5 per cent. of the sales price of the lands sold. This construction is made by applying the rule that the court must construe the contract as a part of the pleadings. This paragraph further alleges that appellee accepted the service in obtaining the contract, and became obligated and bound to pay therefor the usual, reasonable, and customary commission of 5 per cent. of the sales price of the lands sold under the contract, whether it be one of sale or of agency. This construction must also be made by construing the allegations of the petition with the provisions and terms of the contract. The seventh paragraph alleges demand of the commission due for the obtaining of the contract attached, whether it be one of sale or of agency; and the prayer for relief is for the commission due by reason of the procuring of the contract attached to the pleading. There is also a prayer for general relief. So, we must conclude that the trial court erred in sustaining the special exceptions to paragraphs 7 and 8 of appellant's amended original petition as setting up a new cause of action barred by limitation. The allegations of paragraphs 7 and 8 of the amended pleadings are substan-

tially the same as the material allegations of the fifth and sixth paragraphs of the original pleadings. The proof establishing both pleadings would be substantially the same. The contract proves itself. The proof of its breach and the amount relied upon for such breach are substantially the same in both pleadings. The original pleading was, therefore, sufficient to inform the adverse party that the pleader was relying upon a cause of action based upon an implied contract, or a quantum meruit, to be paid for procuring the contract, whether one of sale or one appointing an agent to sell appellee's lands therein described.

For the reason above stated, the judgment of the trial court is reversed, and the cause remanded for trial on its merits.

Reversed and remanded.